This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Ronald Wells, Sr., appeals from the decision of the Summit County Court of Common Pleas, granting summary judgment to appellee, Aames Capital Corporation ("Aames"). We affirm.
 I.
In January 1996, Premier Financial Group, Inc. approved Mr. Wells for an adjustable rate loan in the amount of $300,000 to be secured by a mortgage on real property located at 1100 North Hametown Road in Bath, Ohio.[1] According to the terms of the loan agreement,[2] Mr. Wells was to make monthly payments in the amount of $3,028.23 due on the first of the month beginning March 1, 1996. After the loan agreement was formed, the loan was assigned without recourse to Aames. In August 1996, the interest rate increased, making the monthly payment $3,258.88. Mr. Wells paid $3,258.88 in September and October 1996. In November 1996, however, Mr. Wells reverted to the $3,028.23 amount due to a lapse in memory. Aames negotiated the November check and placed the money into a "courtesy holding account," but did not inform Mr. Wells that the amount was insufficient tender for the full amount due. Mr. Wells made his payments for December 1996 and January 1997; however, Aames did not negotiate the checks.
In February 1997, Aames filed a complaint for foreclosure against Mr. Wells in case number CV 97-02-2303 ("the first foreclosure action"). Mr. Wells counterclaimed. After a bench trial, the trial court issued findings of fact and conclusions of law. The trial court found that, by not rejecting the November 1996 tender or otherwise providing notice that such payment was insufficient, Aames waived the right to the full payment due for that month. The court also determined that Aames was not entitled to acceleration and foreclosure because Aames had failed to give Mr. Wells proper notice of the default under the terms of the loan agreement. Additionally, the trial court concluded that Aames failed to act in good faith by refusing to give Mr. Wells a full accounting when requested, failing to give notice before filing the foreclosure action, denying Mr. Wells the opportunity to cure any deficiencies, and providing Mr. Wells with a statement of the account in excess of the amount due. Accordingly, on March 27, 1998, the trial court entered judgment in favor of Mr. Wells and against Aames, ordering Aames "to reinstate the note and mortgage in the amount due and owing and under the terms and conditions in effect on October 1, 1996" and to pay Mr. Wells $4,000 on the counterclaim and $3,028.23 plus interest at a rate of 12.750% per annum from November 1, 1996.
In early April 1998, counsel for Mr. Wells sent Aames a letter in which he requested payment of the judgment amount entered on March 27, 1998, a complete and updated accounting, and new payment vouchers. Aames did not respond to these requests. Mr. Wells did not make any monthly payments after the March 27, 1998 judgment and had not made any payments since January 1997. On or about June 9, 1998, Aames sent Mr. Wells and his counsel notice that Mr. Wells was in default and needed to submit $75,371.14 by July 15, 1998 in order to cure the deficiencies. Aames warned, inter alia, that the failure to timely cure the default could result in an acceleration of the sums due under the loan agreement, a complaint for foreclosure being filed, and the judicial sale of the property. Aames also provided notice under the Fair Debt Collection Practices Act, which stated in part: "If you notify us in writing that you dispute all or a portion of the debt, we will obtain and send you verification of the debt or a copy of the judgment against you." After receiving this letter, Mr. Wells did not request such an accounting from Aames or otherwise respond to the notice.
On August 28, 1998, Aames filed a second complaint for foreclosure against Mr. Wells, seeking the sum of $299,127.91 plus interest at the rate of 12.75% per annum from December 1, 1996. After both certified mail service and residential service failed, service by regular mail occurred on October 6, 1998. On October 30, 1998, Mr. Wells filed a certification of leave to plead until November 24, 1998. Nevertheless, Aames moved for default judgment, asserting that Mr. Wells had failed to file an answer or other pleadings. On November 13, 1998, the trial court granted default judgment against Mr. Wells. On November 24, 1998, Mr. Wells filed his answer and counterclaims. Mr. Wells timely appealed the November 13, 1998 decision. On August 4, 1999, this court reversed the trial court's entry of default judgment and remanded the case for further proceedings. SeeAames Capital Corp. v. Wells (Aug. 4, 1999), Summit App. No. 19402, unreported.
On remand, several pretrial conferences were held, and trial was scheduled for February 16, 2000. Mr. Wells also served Aames with interrogatories and requests for production of documents. It appears from the record that Aames did not respond to such requests. Consequently, on January 21, 2000, Mr. Wells moved to compel discovery. On February 4, 2000, Mr. Wells moved for a continuance of the trial scheduled for February 16, 2000, as he had not yet received the requested discovery, and the trial court had not yet ruled on his motion to compel. The next filing in the trial court record is Aames' motion for summary judgment filed on May 26, 2000. On June 22, 2000, Mr. Wells filed a brief in opposition to Aames' motion for summary judgment and moved to strike Aames' motion on the grounds that it was filed without written leave of the court. Additionally, Mr. Wells moved for an extension of time to respond to the motion for summary judgment, pursuant to Civ.R. 56(F), as Aames had still not provided him with the aforementioned discovery and the motion to compel remained outstanding. In a judgment journalized on July 31, 2000, the trial court granted summary judgment in favor of Aames and against Mr. Wells on both the complaint and counterclaims. Mr. Wells appealed. The appeal, however, was dismissed on March 5, 2001, as the July 31, 2000 decision of the trial court did not set forth the amount of the judgment, and therefore, was not a final, appealable order. See R.C.2505.02.
On June 15, 2001, Aames moved the trial court to reactivate the case and grant a decree of foreclosure. On June 29, 2001, the trial court entered a decree of foreclosure, entering judgment against Mr. Wells in the amount of $299,127.91 plus interest thereon at the rate of 12.75% per annum from December 1, 1996, less the sum of $7,667.69, which represented the judgment rendered in the first foreclosure action including interest through June 15, 1998. The trial court also marshaled the liens and ordered the sale of the residence. This appeal followed.
 II.
Mr. Wells asserts five assignments of error. We will discuss each in due course, consolidating the first and second assignments of error and the third and fourth assignments of error to facilitate review.
 A. First Assignment of Error The trial court erred in granting summary judgment for the plaintiff-appellee on its complaint and thereafter entering a foreclosure decree thereon.
 Second Assignment of Error The trial court erred in granting summary judgment for the plaintiff-appellee on defendant-appellant's counterclaims.
In his first and second assignments of error, Mr. Wells contends that the trial court erred in granting summary judgment in favor of Aames on Aames' complaint and on his counterclaims. We disagree.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 1. Aames' Complaint
Mr. Wells avers that the trial court erred in granting summary judgment on Aames' complaint. We disagree.
The loan agreement at issue herein provided that, if Mr. Wells did "not pay the full amount of each monthly payment on the date it is due," Mr. Wells would be in default. Additionally, in order to be entitled to acceleration and foreclosure, Aames was required to
 give notice to [Mr. Wells] prior to acceleration following [his] breach of any covenant or agreement in this Security Instrument * * *. The notice shall specify:
(a) the default;
(b) the action required to cure the default;
 (c) a date, not less than 30 days from the date the notice is given to [Mr. Wells], by which the default must be cured; and
 (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform [Mr. Wells] of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of [Mr. Wells] to acceleration and foreclosure.
Upon the failure to cure the default in the specified time, Aames was permitted to accelerate the loan and foreclose in judicial proceedings without further demand.
To meet its Dresher burden, Aames presented evidence, demonstrating that Mr. Wells had not made several of his monthly payments and that Aames had given Mr. Wells proper notice as described in the above quoted passage. Accordingly, Aames met its Dresher burden by adducing evidence showing that Mr. Wells was in default and that Aames had given Mr. Wells proper notice pursuant to the loan agreement, thereby entitling Aames to acceleration and foreclosure.
As Aames met its Dresher burden, it became incumbent upon Mr. Wells to present competent evidence of the type listed in Civ.R. 56(C) to create a genuine issue of material fact as to whether he had made the required monthly payments and as to whether he had in fact received proper notice from Aames pursuant to the agreement. Mr. Wells has failed to do so. Instead, in his appellate brief, Mr. Wells argues that he was excused from making his monthly payments until Aames complied with the March 27, 1998 decision from the prior foreclosure action and the rights established therein. He further contends that Aames is not entitled to acceleration as it did not give him proper notice. Similarly, he also avers that issues in the present case were litigated in the prior action, and therefore, this action is barred by res judicata. These arguments are without merit.
The first foreclosure action was predicated upon Mr. Wells' alleged nonpayment prior to February 1997 when the complaint in the first foreclosure action was filed. In that action, the trial court entered judgment in favor of Mr. Wells and against Aames on March 27, 1998, ordering Aames "to reinstate the note and mortgage in the amount due and owing and under the terms and conditions in effect on October 1, 1996" and to pay Mr. Wells damages. No further requirements were imposed upon Aames. Therefore, as of March 27, 1998, Aames was to reinstate the note and mortgage in the amount due and owing and under the terms and conditions in effect on October 1, 1996. Mr. Wells had the corresponding obligation under the agreement and pursuant to the trial court's March 27, 1998 judgment to make monthly payments in the amount in effect on October 1, 1996, specifically $3,258.88 per month. Clearly, by reinstating the mortgage, Aames had complied with the terms of the March 27, 1998 judgment relevant to the instant action. At that point, Mr. Wells was required to make the monthly payments in the amount of $3,258.88 per month. There is no provision in the March 27, 1998 decision, which excused Mr. Wells from paying the monthly amount under the agreement while he waited for an accounting from Aames and for payment of the damage award. Mr. Wells failed to tender evidence showing that he made any of the monthly payments since March 27, 1998. Furthermore, Mr. Wells has failed to demonstrate that, after he received the notice of default and before the instant action was filed, he asked for an accounting as to the amounts claimed due in the notice. Accordingly, the trial court did not err in determining on summary judgment that Mr. Wells was in default of the loan agreement and that Aames was entitled to acceleration and foreclosure.
Mr. Wells also contends that the issues raised in the present complaint are res judicata based upon the March 27, 1998 judgment. As discussed at length above, the first foreclosure action was based upon Mr. Wells' alleged failure to make the required monthly payments prior to February 1997 when Aames' first complaint for foreclosure was filed. The current action, on the other hand, covers months not litigated in the first foreclosure action. As the bases for the two complaints were different, the present action is not barred by res judicata. See Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, syllabus.
Based on the foregoing, we conclude that the trial court did not err in entering summary judgment in favor of Aames on its complaint for foreclosure.
 2. Mr. Wells' Counterclaims
In his appellate brief, Mr. Wells asserts that the trial court erred in entering summary judgment on his counterclaims of breach of contract, malicious prosecution, abuse of process, and duty to protect property by private sale, as a genuine issue of material fact exists as to each counterclaim. We disagree.
 Breach of Contract
Mr. Wells contends that summary judgment was improper on his breach of contract claim. Specifically, he argues that there was a genuine issue of material fact as to whether Aames: 1) reinstated the loan, 2) failed to give him the notice required to accelerate the loan, 3) failed to notify him in writing of changes in the interest rate, 4) acted in good faith, and 5) failed to provide him with an accounting. We disagree.
As discussed supra, Aames reinstated the loan as required by the March 27, 1998 entry and gave Mr. Wells the notice required to accelerate the loan. There are no genuine issues of material regarding these issues, and Aames is entitled to judgment as a matter of law on them.
Mr. Wells' claim that Aames failed to notify him in writing of changes in the interest rate likewise fails. Mr. Wells has not articulated if or when Aames changed the interest rate without notifying him in writing since the March 27, 1998 decision. The March 27, 1998 decision required Aames to reinstate the loan in the amount due and owing and under the terms and conditions in effect on October 1, 1996. Thus, after reinstatement, the monthly payments were in the amount of $3,258.88. After reinstating the loan and prior to sending Mr. Wells the notice of default, Aames did not change the amount of the monthly payments, thereby triggering Aames' obligation to notify Mr. Wells about such a change in writing. Accordingly, we find that the trial court properly granted summary judgment on this claim.
Next, Mr. Wells contends that the trial court erred in entering summary judgment on his claim that Aames failed to act in good faith. In his appellate brief, Mr. Wells boldly asserts, without further elaboration, that "[s]erious questions exist as to whether plaintiff-appellee acted in good faith especially when it had already been found to have acted in bad faith [in the prior foreclosure action]." However, in the portion of his brief in opposition to summary judgment dealing with this counterclaim, Mr. Wells has failed to point to portions of the record evidencing a lack of good faith by Aames in the present foreclosure action. Consequently, we cannot conclude that the trial court erred in entering summary judgment on this claim.
Lastly, Mr. Wells reasserts the argument that he was not required to make any monthly payments until Aames complied with the order in the prior foreclosure action and gave him an updated accounting. As previously discussed, pursuant to the March 27, 1998 judgment, Mr. Wells was required to make a monthly payment of $3,258.88 upon reinstatement of the loan. Mr. Wells missed several payments, including those payments due in April and May 1998. The March 27, 1998 decision did not excuse Mr. Wells from making those monthly payments while he waited for an accounting. Accordingly, we conclude that the trial court properly granted summary judgment on this counterclaim.
 Malicious Civil Prosecution
Mr. Wells asserts that the trial court improperly granted summary judgment in Aames' favor on his malicious civil prosecution claim, as factual disputes exist as to each element of the claim. We disagree.
The Ohio Supreme Court has held that an action for malicious civil prosecution in Ohio has four essential elements:
 (1) malicious institution of prior proceedings against the plaintiff by defendant,
 (2) lack of probable cause for the filing of the prior lawsuit,
 (3) termination of the prior proceedings in plaintiff's favor, and
 (4) seizure of plaintiff's person or property during the course of the prior proceedings.
Robb v. Chagrin Lagoons Yacht Club, Inc. (1996), 75 Ohio St.3d 264, syllabus. "A cause of action for malicious civil prosecution will lie only in cases where there is a prejudgment seizure of property, i.e., where there essentially has been a judgment against, and a concomitant injury suffered by, a defendant before he has had a chance to defend himself." Id. at 270.
Aames moved for summary judgment on the malicious prosecution claim on the basis that Mr. Wells could not prove the fourth element — seizure of his person or property during the course of the first foreclosure action. In his appellate brief, Mr. Wells asserted that he suffered seizure "by the action itself not to mention damage to [his] credit." Generally, damage to a person's credit, however, does not constitute seizure of property with regard to a malicious civil prosecution claim. See Crawford v. Euclid Natl. Bank (1985),19 Ohio St.3d 135, 137. Further, we cannot find that the institution of the foreclosure action itself constituted a seizure of property for the purposes of a malicious civil prosecution claim. Accordingly, the trial court properly granted summary judgment in favor of Aames on the malicious civil prosecution claim.
 Abuse of Process
Mr. Wells has asserted that the trial court erred in entering summary judgment on his abuse of process claim, as there exists a genuine issue of material fact as to malice. We disagree.
Three elements must be established in a claim for abuse of process:
 (1) a legal proceeding has been set in motion in proper form and with probable cause;
 (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and
 (3) direct damage has resulted from the wrongful use of process.
Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, paragraph one of the syllabus. "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." Robb, 75 Ohio St.3d at 271.
In the present case, the trial court found that Mr. Wells failed to a create a genuine issue of material fact as to malice and ulterior purpose. On appeal, Mr. Wells has only articulated an argument regarding the trial court's finding of a lack of malice. He has not set forth a specific argument regarding ulterior purpose. Accordingly, as Mr. Wells has not specifically challenged the trial court's finding regarding the ulterior purpose element on appeal, we find no error in the trial court's entry of summary judgment against Mr. Wells on the abuse of process claim.[3]
 Failure to Obtain Highest Price at Private Sale
In his last counterclaim, Mr. Wells has asserted that Aames will cause him to suffer damages and a loss of equity, by seeking a public foreclosure sale, rather than a private sale of the property on the open market. This argument is both premature and wholly without merit. Mr. Wells cannot know whether he will suffer damages and a loss of equity, as his property has not yet been sold. Moreover, pursuant to R.C. 2329.01 etseq., a property which has been foreclosed upon may be sold at a judicial foreclosure sale. Accordingly, the trial court properly granted summary judgment in favor of Aames on this counterclaim.
 Conclusion
As there is no genuine issue of material fact to be litigated and Aames was entitled to judgment as a matter of law, we conclude that the trial court properly granted summary judgment in favor of Aames on its complaint and on Mr. Wells' counterclaims. Mr. Wells' first and second assignments of error, therefore, are overruled.
 C. Third Assignment of Error The trial court erred in granting summary judgment for the plaintiff-appellee, and thereafter entering a foreclosure decree thereon, without first granting a continuance for discovery or other appropriate order pursuant to Rule 56(F) of the Ohio Rules of Civil Procedure.
 Fourth Assignment of Error The trial court erred in failing to grant or even consider defendant-appellant's unopposed motion to compel discovery.
In his third and fourth assignments of error, Mr. Wells avers that the trial court abused its discretion when it did not grant his motions for a continuance pursuant to Civ.R. 56(F) and to compel discovery.[4] We disagree.
A trial court has broad discretion in ruling on a motion to compel discovery. State ex rel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467,469. Similarly, the trial court has wide discretion to grant or deny a request for a continuance pursuant to Civ.R. 56(F). Walter v.AlliedSignal, Inc. (1999), 131 Ohio App.3d 253, 264. Therefore, absent an abuse of discretion, an appellate court will not overturn the trial court's ruling on such matters. State ex rel. The V. Cos.,81 Ohio St.3d at 469. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
"A party seeking a Civ.R. 56(F) continuance has the burden of stating a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance." Tandem Staffing v. ABCAutomation Packing, Inc. (June 7, 2000), Summit App. No. 19774, unreported, at 4. Further, "[t]he party must do more than assert a general request; it must demonstrate that a continuance is warranted."Id.
In his appellate brief, Mr. Wells argues that the trial court abused its discretion in effectively denying the Civ.R. 56(F) motion because the information sought in discovery was essential to the present litigation and was uniquely within Aames' control. However, in his Civ.R. 56(F) motion, Mr. Wells failed to explain how the information was necessary to establish his defense to the complaint and to support his counterclaims. He also did not articulate in such motion how the information contained in his discovery requests was uniquely within Aames' control. As previously discussed, "[a] party seeking a Civ.R. 56(F) continuance has the burden of stating a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance." Id. at 4. Mr. Wells failed to do so. Accordingly, we cannot conclude that the trial court abused its discretion in effectively denying Mr. Wells' Civ.R. 56(F) motion. Mr. Wells' third assignment of error is overruled.
In a closely related assignment of error, Mr. Wells avers that the trial court abused its discretion in denying his motion to compel discovery. Mr. Wells, however, has not specifically articulated how the denial of his motion to compel prejudiced his defense of the complaint and the prosecution of his counterclaims. Additionally, under the narrow and unusual circumstances of this case, we find Mr. Wells' decision not to move for sanctions, pursuant to Civ.R. 37, or otherwise press his motion to compel unsettling, considering the highly protracted and circuitous nature of the proceedings before the trial court. Based on the foregoing, we cannot conclude that the trial court abused its discretion in effectively denying Mr. Wells' motion to compel discovery. Mr. Wells' fourth assignment of error is overruled.
 D. Fifth Assignment of Error The trial court erred in granting summary judgment, and thereafter entering a foreclosure decree thereon, without plaintiff-appellee seeking or obtaining leave to file a motion for summary judgment.
In his fifth assignment of error, Mr. Wells contends that the trial court erred in granting summary judgment when Aames failed to obtain leave to file its motion for summary judgment. We disagree.
Prior to the filing of Aames' motion for summary judgment, the trial court conducted several pretrial conferences and set the matter for trial. Pursuant to Civ.R. 56(A), a motion for summary judgment may be made only with leave of court if the action has been set for pretrial or trial. Although the trial court did not expressly grant leave to file the motion for summary judgment in this case, the trial court effectively granted leave by ruling on the merits of Aames' motion. Smith v.Capriolo (Apr. 11, 2001), Summit App. No. 19993, unreported, at 4; see, also, Juergens v. Strang, Klubnik and Assoc., Inc. (1994),96 Ohio App.3d 223, 234. Accordingly, Mr. Wells' fifth assignment of error is overruled.
 III.
Mr. Wells' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
SLABY, P.J., WHITMORE, J. CONCUR.
[1] Mr. Wells had obtained the loan for the renovation of a theater in Cuyahoga Falls. He secured the loan with his personal residence.
[2] The note and the mortgage will be collectively referred to as "the loan agreement."
[3] We note that Mr. Wells did not present evidence of ulterior purpose sufficient to withstand summary judgment.
[4] Although the trial court did not explicitly rule on Mr. Wells' motions to compel discovery and for a continuance pursuant to Civ.R. 56(F), we will presume they were denied. See State ex rel. The V. Cos.v. Marshall (1998), 81 Ohio St.3d 467, 469.